UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD HALL, LARRY DELEON, CHARLES HENDERSON, and BRENDA BENNETT | § § § § | CIVIL ACTION NO. |
| Plaintiffs, | § § | |
| V. | § § | |
| EL DORADO CHEMICAL COMPANY | § § | JURY TRIAL REQUESTED |
| Defendant | § § | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs, **EDWARD HALL, LARRY DELEON, CHARLES HENDERSON, and BRENDA BENNETT** who file this class action complaint against Defendant, **EL DORADO CHEMICAL COMPANY**, and allege as follows:

### NATURE OF THE ACTION

1. This is a class action seeking compensatory and exemplary damages for each Plaintiff individually, and as representatives of the class and subclasses described herein.

2. Plaintiffs allege that the Defendant is liable in causing, or contributing to the cause, of a fire which occurred at Defendant's fertilizer facility located at 6232 W State Highway 21, Bryan, Texas (hereinafter the "Facility") which began on July 30, 2009 (hereinafter the "Fire").

3. Plaintiffs and all other persons similarly situated suffered damages arising out of the Fire and its aftermath as more fully set forth herein.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this class action pursuant to 28 U.S.C. 1332(d)(2), as amended by the Class Action Fairness Act of 2005. In the aggregate, the claims of Plaintiffs and the other members of the Class exceed the jurisdictional minimum amount in controversy of $5,000,000 exclusive of costs and interest. The Plaintiffs and more than two-thirds of the members of the class are citizens of Texas. The primary Defendant is a foreign corporation with its principal places of business in a state other than Texas.

5. The Court has jurisdiction over the Defendant in that it actively operates a business in Bryan, Texas, where the Fire occurred, it does business in Texas, and/or has placed into the stream of commerce hazardous materials which were transported to Texas at its direction, which materials caused, or contributed to the cause of the Fire.

6. Venue is proper in this District because Plaintiffs and other putative class members reside here or operate businesses here and suffered damages from the Fire, which occurred in this District.

## PARTIES

7. Named as Plaintiffs, and as class representatives, herein are:

   a. **EDWARD HALL** who is a person of full legal capacity and domiciled in Brazos County, Texas, and is designated as a representative of Subclass 1. He held a possessory interest in a home in Bryan Texas on July 30, 2009 and was forced to evacuate his home as a result of the Fire.

   b. **CHARLES HENDERSON** who is a person of full legal capacity and domiciled in Brazos County, Texas, and is designated as a representative of Subclass 1. He held a possessory interest in a home and was also employed in Bryan Texas on

July 30, 2009. He was forced to evacuate his place of employment and could not return to his home as a result of the Fire.

c. **LARRY DELEON** who is a person of full legal capacity and domiciled in Brazos County, Texas, and is designated as a representative of Subclass 2. He held a possessory interest in a home in Bryan Texas on July 30, 2009 and was involuntarily confined in his home as a result of the Fire.

d. **BRENDA BENNETT** who is a person of full legal capacity and domiciled in Brazos County, Texas, and is designated as a representative of Subclass 3. She owned and operated a business as a sole proprietorship called Bling It On Gifts and Boutique in Bryan Texas on July 30, 2009 and was forced to close the business as a result of the Fire.

8. Plaintiffs appear in their individual capacity and as representatives of a class as more fully set forth herein.

9. In addition to the above named Plaintiffs, it is further alleged that tens of thousands of residents and businesses of Brazos County, Texas, most of whom at this time are unknown and therefore unnamed, were damaged in one or more ways as herein alleged, who as this class action progresses will be identified, and are in fact contemplated members of the class of persons, entities and businesses whom this action seeks to protect.

10. Defendant, El Dorado Chemical Company, (hereinafter referred to as "Defendant") is a foreign corporation with its principal place of business in Oklahoma City, Oklahoma. Defendant is authorized to do business in the State of Texas and is doing business at 6232 W. State Hwy 21, Bryan, Texas.

## FACTUAL ALLEGATIONS

11. Upon information and belief and at all relevant times, Defendant stored, handled, and processed ammonium nitrate at the Facility, which it used to make fertilizer. Upon information and belief, other hazardous and ultra-hazardous chemicals were also stored, handled and processed at the Facility on and before July 30, 2009.

12. Beginning shortly before noon on Thursday, July 30, 2009, a massive fire destroyed the entire Facility. The Fire burned for an entire day, releasing toxic, hazardous and ultra-hazardous materials into the surrounding neighborhoods and blanketing a large portion of Brazos County.

13. On information and belief, the Fire was caused by an employee of El Dorado who was welding an empty storage bin at the Facility, when a welding spark ignited chemicals, resulting in the Fire.

14. During the day of July 30, 2009, and into the next day, there was a visible and/or odorous chemical cloud from the Fire, which drifted over the Town of Bryan and other areas of Brazos County, potentially exposing the Plaintiffs, and the class they represent, to hazardous, toxic materials. Residents located many miles from the Facility reported being able to see the plume and/or smell the chemicals.

15. Because of the Fire and the resulting invasive chemical cloud, tens of thousands of people were forced to evacuate their homes and businesses and/or shelter-in-place. . Bryan city authorities urged anyone who could smell or see the smoke to evacuate and seek shelter elsewhere. On information and belief, the total number of evacuees is estimated to exceed 20,000.

16. The entire City of Bryan and other areas of Brazos County were essentially shut down during the Fire. As a result, the Plaintiffs, and the entire class, suffered widespread and

substantial damages including the necessity to evacuate homes and businesses and/or to shelter-in-place, the loss of use of homes and businesses, lost earnings and wages, economic losses from businesses, inconvenience, annoyance, and other related damages to be shown at the trial of this matter.

## CLASS ACTION ALLEGATIONS

17. This action is brought by Plaintiffs as representatives of all others similarly situated under the provisions of Rule 23(a), 23(b)(3), 23(c)(4), and 23(c)(5) for compensatory and exemplary damages, court costs and attorneys fees as set forth in more detail below. Each Plaintiff, as a representative of the class, has suffered one or more of the elements of damages as alleged herein and is a member of one or more of the subclasses as set forth below.

18. All Plaintiffs, and members of the class and subclasses, have been harmed by Defendant as described herein at either their residences, places of employment, businesses, or other areas within the area of the class boundaries. The area that was affected by the Fire is located within the geographic boundaries of the furthest extent of the chemical plume emitted by the Fire, which includes, but is not limited to the City of Bryan and the County of Brazos, Texas. The subclasses consist of the respective named Plaintiffs and all those similarly situated within the geographic boundaries of the class.

19. The class so represented by Plaintiffs in this action, and of which Plaintiffs are themselves members, is defined as follows:

All natural persons, whether minor or adult, and entities in Brazos County, Texas, including those falling within one or more of the following subclasses, including any person or entity claiming by, through or under a Class Member, who or which seek compensation for damages, other than personal injuries, resulting from a Fire at the El Dorado Chemical Company Facility in Bryan, Texas on July 30-31, 2009:

> **Subclass 1- Evacuation Subclass**:
> All natural persons, including minors and adults, who, on July 30, 2009, resided, or worked, or had a possessory interest in real property within Brazos County, Texas, and who evacuated in response to the Fire.
>
> **Subclass 2 – Shelter-in-place Subclass**:
> All natural persons, including minors and adults, who, on July 30, 2009 resided, or worked, or had a possessory interest in real property within Brazos County, Texas, and who sheltered-in-place in response to the Fire.
>
> **Subclass 3 - Business Loss Subclass**:
> All natural persons or entities who or which owned and operated Businesses that were physically located within Brazos County, Texas on July 30, 2009, which were forced to cease business operations in response to the Fire and which sustained economic losses as a result of the Fire.

Excluded from the class are those persons or entities who or which would otherwise be Class Members, but who or which are: (i) Defendant or any of its employees, agents, insurers, contractors, and subcontractors, including employees of Defendant's agents, contractors or subcontractors, (ii) the Presiding United States District Court Judge and/or the presiding United States Magistrate Judge, (iii) the attorneys who have made appearances for any of the Parties, or (iv) Opt-Outs.

20. This action does not seek recovery for personal injury damages incurred by class members.

21. The exact number of the members of the above-described class and subclasses is not known, but is estimated to be in the tens of thousands. The class and subclasses are sufficiently numerous that joinder of individual members in this action is impracticable.

22. The claims of Plaintiffs, who are representative of the class and subclasses defined above, are typical of the claims of the class and their respective subclasses, in that the claims of all members of the class and their respective subclasses arise out of the same incident giving rise to the right of Plaintiffs to the relief sought herein. The types of damages suffered by the named Plaintiffs are essentially the same for the class and each subclass.

23. The named Plaintiffs are adequate representative parties for the class and are able to, and will fairly and adequately protect the interests of the class and subclasses. There is no conflict

between any named individual plaintiff and other members of the class or subclasses with respect to this action or with respect to the claims for relief sought herein.

24. The attorneys for the Plaintiffs are experienced and capable in litigation in the field of class actions, mass torts, and complex litigation. They have successfully represented claimants in other litigation of this nature, and they will vigorously prosecute this action on behalf of the Plaintiffs and the entire class.

25.

26. There are common questions of law and fact in this action that relate to and affect the rights of each member of the class and subclasses, which may be certified pursuant to Fed. R. Civ. P. 23(c)(4) including;

  a. The cause or causes of the Fire and release of toxic and hazardous chemicals from the Facility beginning on July 30, 2009, and its aftermath;

  b. The nature and extent of fault or legal liability on the part of the Defendant, with respect to the aforesaid Fire and its aftermath;

  c. The existence, nature and extent of damages resulting from the Fire and its aftermath, which are common to all members of the class, and its subclasses and general causation of the damages;

  d. The nature and extent of fault on the part of Defendant with respect to whether their conduct justifies the imposition of exemplary damages; and

  e. The quantum of exemplary damages, if awarded, for the class and subclasses.

27. These common issues predominate over any individual issues, such as the nature and extent of individual damages sustained by class members.

28. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

   a. The adjudication of common issues may be completed in a single trial, thereby permitting an orderly progression of issue determination.

   b. The adjudication of the common issues may dispose of the need for adjudication of other issues, thereby effecting judicial economy in the completion of the litigation;

   c. As each issue is separately adjudicated, the parties may better be able to evaluate their respective positions, thereby providing the opportunity for earlier resolution of the case;

   d. The class action procedure will permit those persons with relatively small claims, who would otherwise be unable to prosecute their individual actions to join in procedures whereby their interests will be protected;

   e. Class action procedure would enable the Defendant to obtain complete relief from claims for exemplary damages in one proceeding; and

   f. Class action procedure would insure against disparate adjudications in multiple actions and venues and would assure even-handed treatment of the claims of all parties in one proceeding.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

29. Plaintiffs re-allege herein all of the above allegations.

30. At all relevant times, Defendant had a duty to comply with the federal and state regulatory standards, as well as industry standards, governing the labeling, transportation,

storage, handling, processing and disposal of hazardous materials, particularly ammonium nitrate.

31.     At all relevant times, Defendant had a duty to refrain from operating the Facility in a manner that would foreseeably cause harm to Plaintiffs and the other members of the class and subclasses.

32.     At all relevant times, Defendant had a duty to operate the Facility in a safe and reasonable manner and in such a way as to prevent an explosion and fire, particularly in the conduct of welding operations.

33.     At all relevant times, Defendant had a duty to adequately train its employees to properly conduct welding operations at the Facility in a safe and reasonable manner and in such a way as to prevent an explosion and fire.

34.     At all relevant times, Defendant had a duty to adequately train their employees to properly store, handle, process or dispose of hazardous materials in a safe and reasonable manner and in such a way as to prevent an explosion and fire.

35.     At all relevant times, Defendant had a duty to inform Plaintiffs, and the class and subclasses they represent, of conditions at the Facility that posed a threat to the safety and well being of Plaintiffs, and the class and subclasses they represent, and their property.

36.     At all relevant times, Defendant had a duty to exercise reasonable care in the supervision of its employees, particularly in the conduct of welding operations at the Facility.

37.     Defendant knew, or in the exercise of reasonable care should have known, of the serious consequences that chemical fires and resulting chemical exposure could have on people, property, and businesses in the surrounding community.

38. Defendant knew, or in the exercise of reasonable care, should have known, of the dangers associated with the storage, handling, processing and disposal of ammonium nitrate, and other hazardous and ultra-hazardous chemicals and compounds, and the possible adverse consequences of failing to properly keep, maintain, use and handle said chemicals in a reasonable and safe manner.

39. Defendant breached the above duties and was negligent in one or more of the following ways:

    a. By failing to exercise reasonable care in protecting and preserving the rights and safety of persons and property at, or in the vicinity of the Facility;

    b. By failing to exercise reasonable care in the management, supervision and operation of the Facility, including the conduct of welding operations in proximity to flammable and ultra-hazardous chemicals and compounds;

    c. By failing to adequately train its employees to properly conduct welding operations;

    d. By failing to adequately train its employees to properly store, handle, process or dispose of hazardous materials;

    e. By failing to keep, maintain and operate the Facility in a safe manner in that hazardous materials were improperly stored, handled, processed and disposed of, at the Facility;

    f. By releasing toxic and/or hazardous waste in violation of federal and state regulatory standards, as well as industry standards;

    g. By operating the Facility in such a manner as to cause toxic, hazardous and ultra hazardous chemicals to be released from the Facility;

    h.  By operating the Facility in such a manner as to cause a fire and subsequent chemical releases at the Facility;

    i.  By failing to warn the Plaintiffs, and the class and subclasses they represent, the Town of Bryan, of the hidden dangers and unsafe conditions present at the Facility of which they knew, or could have discovered, by reasonable inspection in the exercise of due care.

    j.  By failing to timely inform Plaintiffs, and the class and subclasses they represent, and the Town of Bryan of the nature of the chemicals present at the Facility and the risks associated with exposure to said chemicals; and

    k.  By acting or failing to act in other ways not fully set forth herein but as may be developed during further discovery in this action.

40.    As a result of the foregoing negligence, Plaintiffs, and the class and subclasses they represent, suffered widespread and substantial damages including the necessity to evacuate homes and businesses and/or to shelter-in-place, the loss of use of homes and businesses, lost earnings and wages, economic losses from businesses, inconvenience, annoyance and other related damages to be shown at the trial of this matter.

## COUNT II – RES IPSA LOQUITUR

41.    Plaintiffs re-allege herein all of the above allegations.

42.    At all times relevant, the chemicals and the operations of the Facility were in the exclusive control of Defendant such that they had the superior means for determining the foreseeability of damage to Plaintiffs, and the class and subclasses they represent.

43.    Substantial damage in fact occurred as set forth in this complaint under such circumstances that, in the ordinary course of events, would not have occurred if the Defendant

had used reasonable care under the circumstances in the use, control and operation of the Facility.

44. The Fire caused extensive damage to the Facility, such that critical evidence may have been destroyed that would make it impossible to otherwise prove Defendant's liability.

45. As a direct and proximate result of the negligence of Defendant as hereinabove alleged, the Plaintiffs, and the class and subclasses they represent, were damaged as alleged herein and are entitled to recover the same from the Defendant, without further proof of fault on the part of the Defendant.

## COUNT III – NUISANCE

46. Plaintiffs re-allege herein all of the above allegations.

47. Defendant's tortious or wrongful acts or omissions have unreasonably interfered with the Plaintiffs', and the class and subclasses they represent, use and enjoyment of their properties. This interference has impaired the rights of Plaintiffs, and the class and subclasses they represent, to peacefully enjoy their properties.

48. The interference with the use of the land caused by Defendant was substantial.

49. As a direct and proximate cause of Defendant's private nuisance, Plaintiffs', and the class and subclasses they represent, suffered an invasion of their property by smoke, particulates, and airborne toxins from the fire resulting in widespread and substantial damages including the necessity to evacuate homes and businesses and/or to shelter-in-place, the loss of use of homes and businesses, lost earnings and wages, economic losses from businesses, inconvenience, annoyance, and other related damages to be shown at the trial of this matter.

## COUNT IV – TRESPASS

50. Plaintiffs re-allege herein all of the above allegations.

51. Defendant has trespassed through unlawful, unauthorized, and wrongful entry and damage to Plaintiffs', and the class and subclasses they represent, land by depositing airborne particles of toxic and hazardous materials on it without their permission or invitation.

52. Defendant knew or should have known that a trespass would occur if it failed to prevent the Fire and chemical release from occurring.

53. Further, Defendant has indirectly interfered with the possessory rights of Plaintiffs, and the class and subclasses they represent, due to migration of the hazardous smoke and fallout from the chemical plume. This interference was unreasonable and foreseeable and violated federal and state regulatory, as well as industry standards.

54. As a direct and proximate cause of Defendant's trespass, Plaintiffs, and the class and subclasses they represent, suffered an invasion of their property and by smoke and airborne toxins from the Fire resulting in widespread and substantial damages including the necessity to evacuate homes and businesses and/or to shelter-in-place, the loss of use of homes and businesses, lost earnings and wages, economic losses from businesses, inconvenience, annoyance, and other related damages to be shown at the trial of this matter.

## COUNT V - EXEMPLARY DAMAGES

55. Plaintiffs re-allege herein all of the above allegations.

56. On information and belief, Defendant knew of the extremely explosive nature of ammonium nitrate and that welding in close proximity to a huge stockpile of ammonium nitrate created an extremely high probability of an enormous explosion or fire that would spread noxious smoke and fumes for miles, putting thousands of people at a high risk of serious injury.

57. On information and belief, Defendant, consciously chose to conduct welding operations unsafely, with the full knowledge of the above risks.

58.     The above described acts and/or omissions of Defendant were willful, wanton, and outrageous and as such justify the imposition of exemplary damages for the class and subclasses in order to punish Defendant and to deter such conduct in the future.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray the Court as follows:

1.    That after due proceedings, this action be certified as a class action pursuant to Rule 23;

2.    That in due course, this action proceed as a class action, pursuant to the above named provisions, to judgments as therein provided in favor of Plaintiffs, and the class and subclasses they represent, and against Defendant;

3.    That Plaintiffs, and the class and subclasses they represent, have and recover compensatory and exemplary damages from the Defendant pursuant to their claims for relief set out in this complaint;

4.    That Plaintiffs, and the class and subclasses they represent, have and recover prejudgment and post judgment interest at the maximum legal rate;

5.    That the Plaintiffs, and the class and subclasses they represent, have and recover attorney fees;

6.    That the Plaintiffs, and the class and subclasses they represent, have and recover the cost of this action;

7.    For trial by jury; and

8.    For such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Donald H. Grissom
**Donald H. Grissom**
GRISSOM & THOMPSON, LLP
State Bar No. 08511550
Federal ID No. 23490
don@gandtlaw.com
William W. Thompson, III
State Bar No. 19960050
bill@gandtlaw.com
609 West 10th Street
Austin, Texas 78701
512/478-4059
512/482-8410 Fax

and

/s/ Henry T. Dart
**Henry T. Dart**
Henry Dart, Attorneys at Law, P.C.
La. State Bar No. 04557
hdart@dartlaw.com
510 North Jefferson Street
Covington, LA 70433
985-809-8093
985-809-8094 Fax

and

/s/ M. David Karans
**M. David Karnas**
Bellovin and Karnas, P.C.
Az. State Bar No. 013728
karmas@bellovinkarnas.com
131 East Broadway Blvd.
Tucson, AZ 85701
520-571-9700
520-571-8556 Fax

**Counsel for Plaintiffs**